UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | )    C.A. No. 21-cr-27-MSM-PAS <br> ) |
| GREGORY ALOISIO, et al., | ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The Government moves for forfeiture against the Aloisio Group of "all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable" to its conviction under 18 U.S.C. § 1349. (ECF No. 201 ¶ 2.) That includes "a sum of money equal to the total amount of proceeds obtained as a result of the offenses," and the Government estimates that the sum is $493,994.54. *Id.* ¶¶ 2, 5. In its view, that figure reflects "the revenue identified by Federal Bureau of Investigation ('FBI') Financial Analyst Kathleen Brekenfeld as funds received by Aloisio Group in connection with ten of the properties involved in the defendants' multi-year scheme." *Id.* ¶ 5.

The Aloisio Group objects. (ECF No. 213.) It argues that the Government's calculation is "fundamentally flawed because it ignores relevant and disputed facts." *Id.* at 1–2. Those facts, it says, include the "indisputable benefits that the majority

of the homeowners received through their dealings with Defendants," like avoiding foreclosure and "the resulting stain on their credit." *Id.* at 2. And in the Aloisio Group's view, the calculation also excludes benefits that the lenders received, the overall economy, carrying costs, and other mitigating circumstances. *Id.* at 3–6.

By now, the Court has heard plenty from the parties about calculating the costs of the Defendants' actions in the related (but distinct) contexts of sentencing and restitution. Across these three contexts, forfeiture's reach seems to sweep the widest.

18 U.S.C. § 982(a)(2)(A) states that the Court, after a defendant's conviction of a conspiracy to violate 18 U.S.C. §§ 1343–44, "shall order that the person forfeit" to the Government "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." The First Circuit has described this language as "broadly framed," including within its ambit "property beyond the amounts alleged in the counts of conviction." *United States v. Cox*, 851 F.3d 113, 128 (1st Cir. 2017) (cleaned up). And in the section describing civil forfeiture, right before 18 U.S.C. § 982, the term "proceeds" is defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A).[1] The

---

[1] The Government cites to 18 U.S.C. § 982(a)(2)(A) for this definition of "proceeds." (ECF No. 201 at n.2.) But § 982(a)(2)(A), under the title of "Criminal Forfeiture," does not contain that definition for "proceeds"—or any definition at all. Instead, the definition comes from § 981(a)(2)(A), titled "Civil Forfeiture." *Compare* 18 U.S.C. § 982(a)(2)(A) *with* 18 U.S.C. § 981(a)(2)(A). Still, the First Circuit has referred to the definition of "proceeds" from the civil forfeiture statute in analyzing a criminal mortgage fraud case, so the Court here will do so too. *See Cox*, 851 F.3d at 128 & n.14

Government bears the burden under a "preponderance of the evidence" standard. *Cox*, 851 F.3d at 129.

The Government has met its burden by drawing from Agent Brekenfeld's testimony and reports. Those materials provide her estimation of the "gross revenue" that the Defendants received from each property. *See* ECF No. 201 ¶¶ 6–7 (describing the methodology); No. 201-2 at 18–22 (transcript of trial testimony related to methodology); *see, e.g.*, No. 201-3 at 2 (showing gross revenue from 4 Clarendon St.). "Gross revenue" from the properties involved in the short sale scheme is covered under the statute, because it consists of "rent payments, any option deposits paid down, short sale fees, and proceeds from the sale of the properties." (ECF No. 201-2 at 19.) That is indeed money (and thus proceeds) either "obtained, directly or indirectly," as "the result of the commission of the offense giving rise to forfeiture," or otherwise "traceable thereto" the scheme. 18 U.S.C. §§ 981(a)(2)(A); 982(a)(2)(A). So Agent Brekenfeld's calculations are an appropriate benchmark.

The Court acknowledges the Aloisio Group's argument that the Government's estimate is imperfect, but perfection is not required here—particularly given the forfeiture statute's wide sweep and the First Circuit's broad interpretation of it. The Court has acknowledged imperfections and uncertainties throughout the post-trial

---

(explaining the interplay between the statutes). Although the criminal forfeiture statute does not define "proceeds," the similarities between the civil and criminal statutes lead the Court to conclude that reference to the civil provision here is appropriate. After all, "when Congress uses the same language in two statutes having similar purposes," it is well-established that "it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (cleaned up).

process, and it has accounted for them where appropriate: in calculating loss under the Sentencing Guidelines and in fashioning a sentence. Indeed, most of the Aloisio Group's arguments opposing forfeiture are better suited for those contexts. But its arguments cannot carry the day here, because different standards lead to different analyses and thus different outcomes. And given the First Circuit's holding in *Cox* that the statute covers property related to uncharged conduct stemming from the conspiracy, the Court must agree with the Government that its estimate is conservative; after all, the trial only focused on some properties that the Aloisio Group managed. 851 F.3d at 128.

All that is to say: the Aloisio Group must forfeit a sum of $493,994.54. The table titled "Forfeiture Calculations" (in full on the next page) explains how the Court verified the number that the Government proposed. The Court's Order follows.

| Forfeiture Calculations | | |
|---|---|---|
| Property | Gross Revenue | Record Citation |
| 4 Clarendon St. | $39,300.00 | ECF No. 201-3 at 2. |
| 38 Judith St. | $85,503.10 | ECF No. 201-4 at 2. |
| 67 Hope St. | $33,979.57 | ECF No. 201-5 at 2. |
| 72-74 Princeton Ave. | $20,607.87 | ECF No. 201-6 at 2. |
| 90 Old Oak Ave. | $70,543.68 | ECF No. 201-7 at 2. |
| 117 Shaw Ave. | $94,063.18 | ECF No. 201-8 at 2. |
| 152-54 Mass. Ave | $40,149.00 | ECF No. 201-9 at 3. |
| 156-58 Merino St. | $24,808.14 | ECF No. 201-10 at 2. |
| 1445 Broad St. | $60,040.00 | ECF No. 201-11 at 2. |
| 74 Pomona St. | $25,000.00 | ECF No. 201-12 at 2. |
| **TOTAL**: | $493,994.54 | |

## FORFEITURE ORDER

WHEREAS, on February 8, 2023, a Superseding Indictment was filed in the United States District Court for the District of Rhode Island that included a forfeiture allegation for a forfeiture money judgment in an amount which would equal the total amount of proceeds obtained because of the offenses of conviction;

WHEREAS, the Superseding Indictment charged Gregory Aloisio, the Aloisio Group, LLC, and John DiFruscio, Jr. (the "Defendants"), with one count of Conspiracy in violation of 18 U.S.C. § 1349 (Count 1); Gregory Aloisio and John DiFruscio, Jr.

with three counts of Bank Fraud in violation of 18 U.S.C. § 1344 (Counts 2–4), and one count of Wire Fraud in violation of 18 U.S.C. § 1343 (Count 5); and Gregory Aloisio with one count of Money Laundering in violation of 18 U.S.C. § 1956 (Count 6);

WHEREAS, on March 31, 2023, after a three-week jury trial, the Defendants were convicted of all offenses charged in the Superseding Indictment;

WHEREAS, under 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(A), and 28 U.S.C. § 2461(c), the United States is entitled to an Order of Forfeiture (Money Judgment) consisting of a personal money judgment against the Aloisio Group in the amount of $493,994.54, which constitutes a conservative, reasonable estimation of the proceeds of the Aloisio Group's violation of 18 U.S.C. § 1349; and

WHEREAS, this money judgment is separate from, and in addition to, any order of restitution that may be entered against the Aloisio Group at sentencing; and

WHEREAS, the United States has moved for entry of a forfeiture money judgment of $493,994.54; and

WHEREAS Federal Rule of Criminal Procedure 32.2(c)(1) provides that "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment."

It is hereby ORDERED, ADJUDGED, and DECREED:

1. that the Aloisio Group shall forfeit to the United States a sum of $493,994.54 in the form of a forfeiture money judgment, under 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c), and Rule 32.2(b); and

    2.    that the United States District Court shall retain jurisdiction in the case for enforcing this Order; and

    3.    that the United States may, at any time, move under Rule 32.2(e) to amend this forfeiture money judgment to substitute property having a value not to exceed $493,994.54 to satisfy the judgment in whole or in part; and

    4.    that under Rule 32.2(b)(4)(A), this forfeiture money judgment shall become final as to the Defendant at the time of sentencing, and shall be made part of the sentence and included in the judgment; and

    5.    that the Clerk of Court is directed to send two certified copies of this Order to Sandra Hebert, Assistant United States Attorney, One Financial Plaza, 17th Floor, Providence, Rhode Island 02903, as well as copies of this order to all counsel or parties of record.

SO ORDERED this 14th day of July, 2025.

_____
Mary S. McElroy,
United States District Judge